IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION | PLAINTIFF |
| VS. | No. 3:17CV23-MPM-RP |
| DOLGENCORP, LLC. d/b/a DOLLAR<br>GENERAL STORES, INC. | DEFENDANT |

## ORDER

This cause comes before the court on the motion of defendant Dolgencorp, LLC d/b/a Dollar General Stores, Inc. ("Dolgencorp") for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Equal Employment Opportunity Commission ("EEOC") has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is not well taken and should be denied.

This is a sexual harassment case, filed by plaintiff EEOC, arising out of a harmful work environment allegedly suffered by Keoshal Hankins while working as a sales associate at the Dollar General store in Red Banks, Mississippi. Plaintiff contends that, during her brief employment at Dollar General in 2012,[1] Hankins was subjected to repeated sexual harassment by the store manager Jonathan Holloway, which allegedly included propositions for sex and unwanted and offensive physical contact. Plaintiff alleges that Hankins reported this harassment to the assistant store manager Linda Foshee as well as to lead sales associate Tara Hampton and that Foshee relayed her complaints to Dolgencorp's district manager Paul Grimes and senior human resources manager Jennifer Smallwood. Plaintiff further contends that defendant

---

[1] Hankins was fired after a few months on the job, arising out of suspicions that she had facilitated the theft of store property. Plaintiff does not allege that this firing was in retaliation for Hankins' report of sexual harassment.

responded in a "painstakingly slow" manner to the reports of harassment against Holloway, although it acknowledges that it eventually terminated him, approximately four months after initiating its investigation into his conduct.

Defendant has presently moved for summary judgment, arguing that there is no genuine issue of fact regarding its liability for any sexual harassment committed by Holloway and that it is entitled to judgment as a matter of law. To establish a prima facie case of a sexually hostile work environment under Title VII, plaintiff must show that Hankins (1) belongs to a protected class, (2) was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, [and] (4) the harassment affected a term, condition, or privilege of employment. *Aryain v. Wal-Mart Stores if Tex, L.P.,* 534 F3d 473, 479 (5th Cir. 2008). In seeking summary judgment, defendant only appears to dispute that plaintiff can establish the fourth element of its prima facie case, relating to the seriousness of the harassment allegedly suffered by Hankins. To determine whether the alleged harassment affected a term, condition, or privilege of her employment, a plaintiff must show that the conduct was "severe or pervasive." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005).

In responding to defendant's arguments that the alleged harassment in this case was insufficiently severe, plaintiff provided a list of the harassment which, it contends, Hankins suffered. This court will quote this list in its entirety:

> The summary of the facts of this case (cited previously) show that during the vast majority of the four months that Mr. Holloway supervised Ms. Hankins, Mr. Holloway daily directed some form of unwelcome, offensive and lewd conduct of a sexual nature when Ms. Hankins worked with Mr. Holloway. These comments were as follows:
> • Mr. Holloway asked Ms. Hankins to come to his house so that he could eat pussy;
> • Mr. Holloway made sexual gestures like licking his tongue out at her
> • Mr. Holloway said you don't want me to eat your pussy;
> • Mr. Holloway said, you know I love to eat pussy;
> • Mr. Holloway said, I want to you to cum (sic) on my face;

2

- Mr. Holloway said, I can separate being your manager from outside. When we leave the store, it's personal;
- Mr. Holloway asked Ms. Hankins out on dates;
- Mr. Holloway told Ms. Hankins he wanted to fuck her;
- Mr. Holloway said he would fuck Ms. Hankins good;
- Mr. Holloway said he had a big dick;
- Mr. Holloway offered to pay Ms. Hankins to have sex with him;
- Mr. Holloway appeared in the bathroom while she was cleaning it and said the cameras could not see where they were standing;
- Mr. Holloway rubbed his erect penis against Ms. Hankins' buttocks;
- Mr. Holloway bumped his chest into Ms. Hankins' breast;
- Mr. Holloway placed his hands on Ms. Hankins' shoulders to rub her;
- Mr. Holloway peeked at Ms. Hankins in a sexual and seductive manner from a different area of the store;
- Mr. Holloway walked out of his office on several occasions with an erect penis that could be observed through his pants;
- Mr. Holloway made eye contact with Ms. Hankins and looked down toward his penis;
- Mr. Holloway grabbed his penis from outside his pants to show its size;
- Mr. Holloway, while showing his erection, placed his fingers up to his lips in the shape of the letter V and stuck out his tongue;
- Mr. Holloway sent Ms. Hankins inappropriate text message stating that he wanted to put his dick between Ms. Hankins boobs and rub back and forth, that Ms. Hankins had perfect breast, perfect body and that they should get together soon;
- Mr. Holloway sent Ms. Hankins a text message stating he wanted to kiss Ms. Hankins body and eat her pussy until she cum twice and sex
- Mr. Holloway sent text messages inviting Ms. Hankins out on dates, to the movies and over to his house;
- Mr. Holloway sent text message commenting how nice Ms. Hankins looked in her pants;
- Mr. Holloway gave Ms. Hankins a pornographic DVD; and
- Mr. Holloway told Ms. Hankins he had lots of pornographic DVDs and that's how he learned to eat pussy so good.

The above facts demonstrate Mr. Holloway constantly made vulgar comments to Ms. Hankins, inappropriately touched Ms. Hankins, made inappropriate sexual gestures toward Ms. Hankins, sent lewd and offensive text messages to Ms. Hankins and gave her a pornographic DVD. Mr. Holloway subjected Ms. Hankins to unwelcome and inappropriate touching on several occasions. Whether it was verbal or via text message, the unsolicited invitations and innuendos were endless.

[Plaintiff's brief at 18-19].

Faced with this rather overwhelming response, defendant does not contest the factual basis for any of them its reply brief, and it simply reiterates, in a footnote, its position that the

harassment allegedly suffered by Hankins was neither "severe nor pervasive."[2] This court does not regard this as a serious reply to plaintiff's laundry list of allegations, and the fact that the harassment alleged by Hankins was both "severe" and "pervasive" seems clear enough that it will not explore the issue in any depth. This court notes parenthetically, however, that plaintiff's allegations in this regard do not rest solely upon Hankins' word. For example, Foshee, one of two store employees to whom Hankins complained about Holloway's alleged harassment, testified that she personally saw a text message he wrote to Hankins in which "[h]e said he wanted to put his dick between her boobs and rub back and forth."

In its reply brief, defendant chides plaintiff for its "focus on the salaciousness of Hankins' allegations," but it seems clear that defendant's choice to contest the severe or pervasive nature of the alleged harassment in this case made this proof necessary. Regardless, this court finds that the alleged harassment in this case was both severe and pervasive (even though only one of the two is required), and it will proceed to a discussion of defendant's two-part affirmative defense, which is based upon the U.S. Supreme Court's decisions in *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) and *Burlington Industries, Inc. v. Ellerth*, 24 U.S. 742 (1998).

This court notes at the outset that the *Faragher/Ellerth* defense is applicable only to sexual harassment by *supervisors*; an employer can be held liable for harassment by co-workers if it can simply be shown that it acted negligently. *See Vance v. Ball State Univ.,* 570 U.S. 421, 424, 133 S. Ct. 2434, 2439 (2013). It is undisputed that Holloway was, in fact, Hankins'

---

[2] Specifically, defendant writes in footnote 2 of its reply brief that:
> Dollar General has also moved for summary judgment on the EEOC's sexual harassment claim on the basis that the conduct alleged does not meet the high bar required to be severe or pervasive. For the reasons stated in Dollar General's previously filed memorandum of law, summary judgment should be granted for Dollar General on that separate and independent basis as well.

supervisor, and, as such, neither side disputes the applicability of the *Faragher/Ellerth* standard in this case. Under *Faragher/Ellerth*, even if a plaintiff can otherwise establish a hostile work environment claim because the underlying alleged misconduct was sufficiently severe or pervasive, an employer is still entitled to summary judgment when it establishes (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). "The *Faragher/ Ellerth* affirmative defense is conjunctive," and the defendant bears the burden of proving both elements by a preponderance of the evidence. *Aryain*, 534 F.3d at 483.

Thus, unlike in cases of harassment by simple co-workers, an employer can only avoid liability for severe or pervasive harassment by its supervisors if it can show *both* that it acted reasonably in preventing and correcting harassment *and* that the employee acted unreasonably in failing to take advantage of anti-harassment procedures which were available. For the reasons discussed below, this court concludes that defendant has failed to establish the first element of the *Faragher/Ellerth* defense in this case, and this alone is sufficient to defeat its motion for summary judgment.

With regard to the first *Faragher/Ellerth* factor, this court notes that there is a striking difference between the description of the applicable legal standard set forth in defendant's initial summary judgment brief and in its reply brief. In its initial brief, defendant conceded that the inquiry into whether the employer "exercised reasonable care to prevent and correct any harassing behavior" under *Faragher/Ellerth* includes an inquiry not only into the policies and procedures which an employer has enacted to combat sexual harassment, but also into the

manner in which it carried out those policies in a particular case. Specifically, defendant wrote in its initial brief that:

> When an employer receives a report of perceived harassment, the investigation undertaken "is most easily seen as bearing upon the 'prompt correction' aspect" of *Faragher/Ellerth*'s first prong, [but] "it ultimately becomes a 'prevention' measure as well… prompt and thorough investigation serves as a deterrent to potential violators." *EEOC v. Boh Bros. Constr. Co., L.L.C.,* 731 F.3d 444, 465 n. 25 (5th Cir. 2013). There is no bright-line rule as to how prompt an investigation must be to support a *Faragher/Ellerth* defense, and the Fifth Circuit has consistently recognized the reality that confirming the scope of an employee's complaint and investigating it appropriately takes a reasonable amount of time.

[Summ judg. Brief at 14-15].

In so arguing, defendant correctly noted that the Fifth Circuit in *Boh Bros* referred to the "prompt correction aspect" of the first *Faragher/Ellerth* factor, thus making clear that the specific nature of the employer's response to the alleged acts of sexual harassment is very much relevant in sexual harassment cases. In its initial brief, defendant followed this recitation of the legal standard with a discussion of the facts in the record which, in its view, supported a conclusion that it conducted the investigation into the allegations against Holloway "in a reasonably prompt manner." [Brief at 15-16]. Defendant further argued that "even if the EEOC were, with the benefit of 20/20 hindsight, to target areas where in its judgment the investigation should have proceeded differently, that is insufficient as a matter of law to render the investigation (which resulted in the termination of the alleged harasser) unreasonable or ineffective." [Defendant's brief at 17].

For its part, plaintiff provided, in its own brief, a discussion of the facts of the case which, in its view, supported a conclusion that the investigation was carried out in a "painstakingly slow" manner. [Plaintiff's brief at 13]. For example, plaintiff notes multiple occasions in which various individuals who had reported Holloway's alleged sexual harassment

found that their complaints were not responded to or taken seriously. [Plaintiff's brief at 25-29]. In its brief, plaintiff takes particular issue with the response provided by district manager Paul Grimes, who is exactly the sort of senior manager that defendant characterizes as a proper individual to receive complaints regarding sexual harassment matters. [Id. at 25-25]. Hankins testified that she complained about Holloway's harassment to assistant store manager Foshee, who relayed her complaints to Grimes and, when she felt his response was ineffective, to a senior human resources manager.

In describing its proof in this regard, plaintiff writes in its brief that:

> The next day after seeing the text message, Ms. Foshee called District Manager Paul Grimes. After receiving three voicemail messages from Ms. Foshee, Mr. Grimes finally returned Ms. Foshee's call. Ms. Foshee spoke with Grimes twice. The first time, she reported that Ms. Hankins was having a problem with Holloway being too touchy feely and Ms. Hankins did not want to work with Holloway. Ms. Foshee also reported that Mr. Holloway sent Ms. Hankins some text messages that were sexual in nature. Although Mr. Grimes had prior notice of Mr. Holloway's harassment regarding Jamie Allen and another female employee, Mr. Grimes did not ask Ms. Foshee about the details of the text message. In fact, Mr. Grimes did not seem concerned about Ms. Hankins' complaint. Despite Mr. Grimes' apparent lack of concern for Ms. Hankins' complaint, he told Ms. Foshee he would take care of it.
>
> When Ms. Foshee spoke with Mr. Grimes the second time, Mr. Grimes questioned whether Ms. Foshee was blowing things out of proportion. Mr. Grimes made this statement with knowledge of the prior complaints against Mr. Holloway by other female employees. Mr. Grimes assured Ms. Foshee he had spoken with Mr. Holloway and taken care of the matter. Despite Mr. Grimes' assurances to Ms. Foshee . . . Mr. Grimes had not taken care of the matter because Mr. Holloway continued to harass Ms. Hankins. On May 3, 2012, Ms. Foshee reported Ms. Hankins' complaint to Dollar General's ERC via the 1-888 number and Employment Practices and Dispute Resolutions Manager Jennifer Smallwood because Mr. Grimes failed to resolve the matter.
>
> Ms. Foshee informed Ms. Smallwood that Mr. Holloway made inappropriate comments to Ms. Hankins and Ms. Hankins did not feel comfortable working with Mr. Holloway at night. Ms. Foshee also told Ms. Smallwood that Ms. Hankins had saved text messages from Mr. Holloway. Additionally, Ms. Foshee told Ms. Smallwood that despite leaving numerous messages for Mr. Grimes, he would not return her call and she did not think Mr. Grimes would be objective.

[Plaintiff's brief at 11-12 (record citations omitted)].

7

Plaintiff appears to have a strong factual basis for casting doubt upon the promptness and efficacy of Grimes' response to the complaints of sexual harassment against Holloway. For example, when asked about Grimes' response to her complaint, Foshee testified as follows:

> Q: And what was Mr. Grimes' response?
> Foshee: He said that he would take care of it.
> Q: To your knowledge, did he take care of it?
> Foshee: Not in any way that I could tell.

[Foshee depo. at 39-40]. This court notes that Grimes' own deposition testimony suggests that the reports of sexual harassment made against Holloway did not make much of an impression on him. Indeed, Grimes testified that, while he did recall two employees making prior claims of harassment against Holloway, he could recall few, if any, specifics in this regard. [Grimes depo. at 55]. In the court's view, a jury might well regard Grimes' hazy recollection in this regard as further indication that Holloway's alleged sexual harassment of multiple employees was not of great concern to him.

In its reply brief, defendant chose not to dispute plaintiff's factual characterization of the remedial actions it took, but argued, contrary to its initial briefing, that the promptness of its response is not even a factor in determining whether the first *Faragher/Ellerth* factor is met. Specifically, defendant writes, in the first paragraph of its reply brief, that:

> The EEOC's opposition to Dollar General's motion for summary judgment does not apply the correct legal standard to the *Faragher/Ellerth* defense. Instead of focusing on Dollar General's undisputed efforts to prevent and correct harassment, and Keoshal Hankins' indisputable failure to take advantage of those efforts or otherwise avoid harm, the EEOC tries to import the "prompt remedial action" standard in an apparent attempt to heighten Dollar General's legal burden.

[Reply brief at 1]. This court finds this to be a surprising argument, considering that defendant itself acknowledged in its initial brief that the Fifth Circuit has held that there is a "prompt

correction aspect" to the first part of the *Faragher/Ellerth* defense. [*Id.* at 14, citing *Boh Bros.,* 731 F.3d at 465 n. 25].

In this court's experience, in cases where a party argues in its reply brief that a different legal standard applies than the one it had previously agreed applies in its initial brief, this is usually because it feels that it is unable to rebut the plaintiff's characterization of the facts of the case. This appears to be the case here. Making it clear that it did not simply mis-speak in its first paragraph of its reply brief, defendant later argues in that brief that:

> The gravamen of the EEOC's argument against Dollar General's assertion of the *Faragher/Ellerth* defense is that Dollar General cannot establish it took "prompt remedial action" in response to Hankins' complaint. In making that argument, the EEOC applies the wrong legal standard. * * * Prompt remedial action is not an element of the *Faragher/Ellerth* defense; it is one of the prima facie elements of a harassment claim applicable to alleged coworker harassment. The distinction is important because the first element of *Faragher/Ellerth* requires reasonable care under the circumstances, and not necessarily "prompt remedial action … 'reasonably calculated' to end the harassment." * * * By conflating the "prompt remedial action" prima facie element with the "reasonable care to prevent and correct" element of the *Faragher/Ellerth* defense, the EEOC incorrectly ignores the primary focus the Supreme Court and Fifth Circuit have put on the employer's antiharassment policy.

[Defendant's reply brief at 2-4].

It is difficult to know what to make of defendant's argument, since it devoted several pages of its initial brief to its discussion of the law and facts relevant to the issue of whether its response to Holloway's alleged harassment was sufficiently prompt. [*Id.* at 14-17]. Perhaps there is some way to reconcile the arguments set forth in the two briefs filed by defendant, but, if so, it is not at all clear to this court. Regardless of the consistency of defendant's arguments, this court has a responsibility to apply the correct legal standard, and it will accordingly address this issue. Once again, defendant correctly cited the Fifth Circuit's decision in *Boh Bros.* for the proposition that there is a "prompt correction aspect" of the *Faragher/Ellerth* defense, *id.* at n. 25, and this court sees no indication that the Fifth Circuit misspoke in so writing. Indeed,

defendant cites no decisions, from any court, which state that district courts should disregard evidence that a defendant failed to take prompt corrective action in a particular case.

In the court's view, a rule of law barring courts from considering the actual corrective steps taken (or not taken) by the employer in response to complaints of sexual harassment would contravene the basic function of the *Faragher/Ellerth* standard, as well as Fifth Circuit precedent. In *Nash v. Electrospace Sys., Inc.,* for example, the Fifth Circuit wrote that:

> We affirm, because Nash's claims of harassment, even if true, did not refute the efficacy of ESI's procedures for responding to alleged sexual harassment. When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability.

9 F.3d 401, 402 (5th Cir. 1993). Thus, the Fifth Circuit in *Nash* clearly regarded a company's "procedures for responding to alleged sexual harassment" and whether it took "prompt remedial action" as both being relevant in sexual harassment cases. Common sense dictates that such is the case, as do the policy considerations undergirding the *Faragher-Ellerth* standard.

As discussed previously, *Faragher-Ellerth* provides a rather limited affirmative defense for cases in which the proof demonstrates, among other things, that the employer acted reasonably to "prevent and correct promptly any sexually harassing behavior." It is unclear to this court why, in determining whether the employer acted reasonably to "prevent and correct promptly any sexually harassing behavior," it should somehow be off-limits to consider the concrete steps which the employer took (or, more particularly, did not take) when actually confronted with concrete and specific reports of sexual harassment. Such a holding would allow employers to avoid liability under *Faragher-Ellerth* by simply putting on a charade, pursuant to which they enact policies and procedures which "look good on paper" but are not actually acted upon.

Once again, the *Faragher/Ellerth* standard applies only to cases in which *supervisors* committed alleged acts of sexual harassment, and it is intended to be a more stringent (for the employer) standard than the simple negligence standard that applies to determine an employer's liability for acts of sexual harassment by co-workers. In cases of sexual harassment by co-workers, employers face liability if they were "negligent in controlling working conditions," *Vance,* 570 U.S. at 424, and, in making a determination in this regard, it would clearly seem relevant whether or not the employer responded reasonably to reports of sexual harassment. Defendant acknowledges this fact in its brief, writing that "prompt remedial action is not an element of the *Faragher/Ellerth* defense; it is one of the prima facie elements of a harassment claim applicable to alleged coworker harassment." [Reply brief at 3]. While defendant thus properly acknowledges that deficiencies in how it reacted to claims of harassment against Holloway would be relevant if he had simply been Hankins' co-worker, it is asking this court to disregard any such evidence because he was her supervisor. This line of argument turns the basic purpose of the *Faragher/Ellerth* standard on its head, by applying a more lenient standard to a claim of harassment by a supervisor than would be applicable to one involving alleged co-worker harassment.

In arguing that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," defendant focuses almost entirely, in its reply brief, upon the anti-harassment policies which it has enacted as a corporation. For its part, plaintiff appears to take issue with at least some of defendant's policies and procedures, although it does not appear to actually base its claims in this case upon the deficiencies in such policies.[3] It is, in fact,

---

[3] Plaintiff does appear to take issue with at least some of defendant's policies, writing that:
During her employment, Dollar General never provided Ms. Hankins with any type of orientation. Ms. Hankins never received a copy of the company handbook. No one reviewed a copy of the handbook with Ms. Hankins. Ms. Hankins never received a copy of the Sales

11

significant that defendant enacted anti-harassment policies, but policies are of little benefit if an employer does not act upon them. In so stating, this court notes that *Faragher* and *Ellerth* were decided in 1998, and, as such, employers have known since then, at the latest, of the necessity of enacting anti-sexual harassment policies. That being the case, it would be rather astonishing to this court if a large corporation such as Dolgencorp had not enacted such policies, given that the *Faragher/Ellerth* standard is so well known. Indeed, it strikes this court that minimally competent corporate counsel is all that is required for a large corporation such as defendant to draft anti-harassment policies and procedures which "look good on paper."

While defendant did argue in its initial brief that it acted reasonably promptly to correct any sexual harassment, plaintiff's brief included a discussion of evidence in the record which suggests otherwise. In its brief, plaintiff writes that:

> Here, Ms. Hankins followed Dollar General's Policy. The store manager, Mr. Holloway, sexually harassed Ms. Hankins. The Policy required Ms. Hankins to complain to the manager. Ms. Hankins complained to Assistant Store Manager Foshee. Ms. Foshee confronted Mr. Holloway who laughed in her face. Ms. Hankins also complained to Lead Sales Associate Hampton. Ms. Hampton tried to convince Mr. Holloway to allow Ms. Hankins to work on the same shift as Ms. Hampton. Again, Mr. Holloway laughed and refused to allow the shift change. After Ms. Foshee saw the vulgar text message from Mr. Holloway, Ms. Foshee contacted Mr. Grimes, the district manager. Mr. Grimes agreed to handle the matter. Mr. Grimes did not.
>
> As noted earlier, Mr. Grimes and Ms. Foshee knew about prior complaints of sexual harassment against Mr. Holloway. They had not exercised reasonable care to prevent and correct promptly Mr. Holloway's harassing conduct as the conduct had continued after Mr. Holloway hired Ms. Hankins. If they had exercised reasonable care to prevent and correct Mr. Holloway's conduct, the Commission doubts Ms. Hankins would be a victim.

[Plaintiff's brief at 25].

---

Associate job description. No one gave her a tour of the store or pointed out any corporate 1-888- telephone numbers. No one showed Ms. Hankins any postings with Mr. Grimes telephone number.

[Plaintiff's brief at 3]. While plaintiff thus takes issue with at least some of the procedures which defendant put into place to combat harassment, the emphasis in its brief is on the manner in which they were carried out in this case.

In arguing that defendant did not act with reasonable promptness to correct Holloway's sexual harassment, plaintiff relies heavily upon evidence that it had been informed of alleged acts of sexual harassment by Holloway against other employees *before* plaintiff's alleged harassment and that it failed to take action in response to those complaints. In particular, plaintiff argues in its brief that:

> Dollar General failed multiple times to take prompt corrective action in response to complaints of harassment. These multiple failures show Dollar General's policy is ineffective as evidenced below:
> • In March 2012, just before Ms. Hankins began her employment with Dollar General, an unidentified former female employee called Mr. Grimes regarding of Mr. Holloway's behavior. Dollar General did not take any action. (Grimes Dep., at 55:1-21)
> • Before her employment ended, former Lead Sales Associate Jamie Allen attempted to contact the incoming District Manager Paul Grimes and the outgoing District Manager Hope Davis about Mr. Holloway's harassing behavior. Neither District Manager returned Ms. Allen's call. (Allen Dep., 61:7-15)
> • Ms. Allen reported Mr. Holloway's behavior to Ms. Foshee. (Allen Dep., at 65:2-5) Instead of reporting the conduct, Ms. Foshee advised Ms. Allen to get together with another employee who Mr. Holloway was harassing and report Mr. Holloway's behavior.

[Plaintiff's brief at 26].

In its reply brief, defendant does not take issue with plaintiff's description of the facts in this regard; indeed, it completely fails to engage on this issue, factually or legally. Simply ignoring plaintiff's proof and arguments on this issue does not remove any of their force, however. Rather than engage with plaintiff's arguments regarding reports of harassment made by other employees against Holloway, defendant instead seeks to draw attention once again to its sexual harassment policies, as if this court should regard what it *says* as being more important than what it actually *does*. To be clear, plaintiff has presented proof that two separate female employees complained about Holloway *before* plaintiff made her complaint, and this would certainly seem to fall in the category of "preventative" steps which could have been taken.

13

Considering the evidence in the light most favorable to plaintiff, a jury could reasonably find that whatever anti-harassment policies Dolgencorp enacted as a corporation, its actual response to the complaints of sexual harassment against Holloway were very much lacking. Confronted with evidence such as Foshee's testimony that district manager Grimes took no discernable steps in response to her passing on Hankins' report of harassment against Holloway, defendant essentially waves its anti-harassment policies in the air and would have this court ignore the manner in which those policies were actually carried out in this case.

In the court's view, the proof of the pudding is in the eating, and it matters very little what policies an employer chooses to enact if it does not actually act reasonably in response to complaints by employees. Once again, the *Faragher-Ellerth* inquiry involves a determination whether the employer acted reasonably to "prevent and correct promptly any sexually harassing behavior," and, while policies and procedures are quite relevant in this regard, any corrective actions taken (or not taken) are very much relevant as well. This court therefore concludes that defendant has failed to establish the first element of the *Faragher/Ellerth* defense, and this alone is sufficient to defeat its summary judgment motion.

In light of the court's conclusions stated above, it is, strictly speaking, unnecessary for it to address the second *Faragher/Ellerth* factor, relating to the reasonableness of Hankins' actions in reporting Holloway's alleged harassment. Nevertheless, this court will briefly address this issue, which will become relevant if it is deemed to have erred in finding that the first *Faragher/Ellerth* factor is not met in this case. This court regards the second factor as presenting a closer issue, largely due to the quite stringent Fifth Circuit authority which exists in this context. Indeed, the Fifth Circuit has held that "[i]n most cases, as here, once an employee knows his initial complaint is ineffective, it is unreasonable for him not to file a second

14

complaint, so long as the employer has provided multiple avenues for such a complaint."
*Lauderdale v. Tex. Dept. of Justice*, 512 F.3d 157, 165 (5th Cir. 2007). In so holding, the Fifth Circuit in *Lauderdale* wrote that:

> We have confronted a similar circumstance before. In *Wyatt v. Hunt Plywood Co.,* 297 F.3d 405, 412 (5th Cir. 2002), the plaintiff reported her supervisor's harassment to his supervisor, who dealt ineffectively with the harassment and subsequently began harassing the plaintiff himself. We held that it was unreasonable for the plaintiff not to report the harassment to another person listed in the defendant's reporting policy once her initial complaint was obviously ineffective. *Id*. at 413.

*Lauderdale*, 512 F.3d at 165. In requiring, in "most cases," that a plaintiff, in effect, "try again" if her first report of harassment is ineffective (even if the initial reportee joins in the harassment), the Fifth Circuit appears to have set the bar quite low for employers to meet the second part of the *Faragher/Ellerth* standard. This certainly makes it possible that the Fifth Circuit would agree with defendant that the second factor is not met in this case, although this court concludes that it is, for reasons it will presently explain.

In the court's view, Hankins did make more than one report of harassment in this case, both personally and through a surrogate. In particular, this court notes that Hankins reported Holloway's alleged harassment both to assistant store manager Foshee and to lead sales associate Tara Hampton. While this court agrees that only Foshee qualifies as an actual "manager" authorized to receive reports of harassment under Dolgencorp policy, the report to Hampton clearly represents "something more" above and beyond a single report of sexual harassment. In so stating, this court notes that, as quoted in footnote 3 above, plaintiff argues that defendant did not take sufficient steps to inform Hankins of whom the proper recipients of sexual harassment reports are and to facilitate the filing of reports with them. Moreover, even assuming that the Fifth Circuit were to conclude that only Foshee was a proper recipient of a sexual harassment complaint, she testified, as noted previously, that she reported Holloway's alleged harassment

15

first to district manager Grimes, and when that proved ineffective, to Employment Practices and Dispute Resolutions Manager Jennifer Smallwood. This appears to be precisely the sort of "second try" which Fifth Circuit precedent requires in "most cases." Moreover, while this second attempt was made not by Hankins personally, but by Foshee acting on her behalf, this court sees no reason why this should make a dispositive difference.[4] Thus, this court finds that defendant has failed to establish the second element of the *Faragher/Ellerth* standard and that summary judgment is in order for this reason as well.

In light of the foregoing, it is ordered that defendant's motion for summary judgment is denied.

This, the 8th day of May, 2018.

                                              **/s/ MICHAEL P. MILLS**
                                              **UNITED STATES DISTRICT JUDGE**
                                              **NORTHERN DISTRICT OF MISSISSIPPI**

---

[4] In its reply brief, defendant argues that "[a]n employee cannot satisfy its burden by pointing to actions others may or may not have taken," but, importantly, it cites no authority for this proposition. [Reply brief at 9]. This court might agree with defendant if Foshee had not relayed plaintiff's complaint against Holloway *on her behalf*, but the proof suggests that she did, in fact, act on her behalf. At the very least, there appear to be fact issues in this regard, and two of defendant's senior managers – Grimes and Smallwood – were clearly informed of allegations that Holloway had sexually harassed Hankins.